Clif E. Rankin and Jane McK. Rankin v. Commissioner.
Rankin v. Commissioner
Docket No. 33798.
United States Tax Court
1953 Tax Ct. Memo LEXIS 38; 12 T.C.M. (CCH) 1367; T.C.M. (RIA) 53385; December 4, 1953
*38 Advances made to a controlled corporation resulting in loss to principal stockholder held deductible by stockholder only as a nonbusiness bad debt. Wm. J. Adams, Jr., Esq., Jefferson Standard Building, Greensboro, N.C., for the petitioners. D. Z. Cauble, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies in income tax for the calendar years 1944, 1945, and 1946, in the respective amounts of $120.41, $1,627.58, and $7,462.09. The sole issue presented is whether the petitioners are entitled to a deduction of $48,484.28 as a business bad debt in 1946, resulting in an operating loss carry-back to 1944 and 1945. Some of the facts are stipulated. The petitioners filed joint returns for the calendar years 1944, 1945, and 1946, on the cash basis with the collector of internal revenue at Greensboro. North Carolina. Findings of Fact The stipulated facts are so found. The petitioners are husband and wife. They reside at Fayetteville, North Carolina. Rankin was engaged in business as a distributor of products of The Texas Company for about 12 years prior to 1944. This business occupied *39 the major part of his time and attention until he sold it on September 1, 1944. In June 1945 he acquired a two-thirds interest in a partnership doing business as Rankin Lumber Co. He operated this business throughout 1946. There were some 75 employees in this business and Rankin devoted about ten hours a day to it. Frederick C. Owen operated a machine shop in Fayetteville. Owen invented a welding machine on which he secured a number of patents, the earliest in 1926 and the latest in 1943. L. N. Whitted became interested in the commercial possibilities of this welder in 1936 and sought to interest Rankin in financing the manufacture and sale of welders of this type. On February 18, 1936, Rankin and Owen entered into a written contract whereby Rankin loaned $2,600 and agreed to lend further sums up to $8,000 and Owen agreed to use the funds for the manufacture of welders and to repay Rankin from the proceeds of sales. Pursuant to this, Rankin loaned Owen about $8,000, which was repaid. From about 1937 to 1941 Rankin, as sole proprietor, operated a business under the name of Owen Electric Sales Company selling on a commission basis, or at a markup, welders manufactured by Owen. *40 Income tax returns of Owen Electric Sales Company show the following gross sales and operating losses for the years 1937 to 1940, inclusive: Year
Gross Sales
Operating Loss
1937
$9,120.22
$ 674.63
1938
5,219.98
3,211.29
1939
4,677.26
4,784.52
1940
3,952.87
4,299.27
In May 1940 Whitted, acting for Rankin, by contract with Owen secured the exclusive right to manufacture and sell the welders, upon payment of an annual royalty of $7,500 and additional royalties on welders in excess of 500 built in any one year. The contract was assignable and in 1941 was assigned to Owen Electric Company. Owen Electric Company was incorporated February 6, 1941. The stock was of a par value of $1 per share. Of 37,200 shares issued, 31,200 were issued to Rankin or his nominee. Rankin paid for his shares by contributions of inventory, machinery, organization expenses, and good will. The item of good will represented the value placed by Rankin on the Owen contract. Two other stockholders paid in $6,000 in cash for 6,000 shares. One of these sold his 1,000 share holding to Rankin in April 1943. Owen Electric Company engaged in the business of manufacturing and selling *41 the welders invented by Owen. It had the following gross sales and operating losses for the years 1941 to 1945, inclusive: Year
Gross Sales
Operating Loss
1941
$16,600.01
$ 2,461.93
1942
17,817.51
23,231.36
1943
7,111.64
15,403.03
1944
927.50
11,125.62
1945
1,221.56
11,254.23
In 1946 Owen Electric Company had gross sales of $50 and sustained a total loss on liquidation of $25,023.11, of which $18,761.57 was a loss from sale of assets. Rankin advanced the following amounts to Owen Electric Company in the years 1941 to 1946, inclusive: 1941
$ 5,795.00
1942
13,942.50
1943
6,050.00
1944
8,880.00
1945
10,625.00
1946
5,691.78
These were recorded on the books of the Company. Owen Electric Company carried on business in a building 40 by 100 feet in area built by Rankin on property he owned in Fayetteville. The Company had one office employee and eight to ten other employees including one graduate electrical engineer and some men experienced in electrical work. The building housed the office, machinery and equipment for building the welders. Rankin was president and treasurer of the Company and in charge of its operations. *42 He attended to all financial matters and supervised the shop in a general way and stopped at the plant nearly every day. Whitted was in charge of sales and was on the road most of the time. Rankin made some trips on business of the Company. A preliminary certificate of dissolution of Owen Electric Company was issued by the Secretary of State of North Carolina in May 1946. After due advertisement, a public sale of the remaining assets of the corporation was held on September 20, 1946. Rankin purchased these assets at the sale for $2,500 and the Company thereupon became completely liquidated. Rankin's advances to the Company were used to pay current operating expenses including principally the royalty payments to Owen. The advances were not used for investment in land or buildings. They were unsecured. At the time the amounts were advanced Rankin's stock was fully paid for. The difference between the aggregate amount of the advances, $50,984.28, and the amount paid by Rankin for the assets on liquidation of the Company, $2,500, or $48,484.28, has never been repaid to Rankin. The debt created by Rankin's advances to the Company became worthless in 1946 when the Company was dissolved *43 and liquidated. The petitioners' income tax return for 1944 showed income of commissions from The Texas Co., rents, and hauling income. Their return for 1945 showed income of rent from service stations, and from Rankin Lumber Company, and a loss from Owen Electric Company. Their return for 1946 showed Rankin's occupation as "Partner-Rankin Lumber Co." and reported income from the lumber company and rentals, and a loss from a bad debt. Rankin also was interested in certain inventions of Charles F. Harris. Harris devised a mechanical insurance vendor to issue policies in public places such as bus stations, and a coin changing device for use in vending machines such as soft drink dispensers to deliver the merchandise and make change. Rankin loaned Harris $600 in 1939 secured by an assignment of one-half interest in the insurance vendor, and gave Harris some small parts to help him. With two other men, Dixon and Olive, Rankin backed Harris with financial support in efforts to perfect and market these inventions. These three men purchased a half interest in these devices after 1939 and by written agreement provided for financing them. Patents were secured by Harris in 1941 and 1942. *44 In 1941 Harris, Rankin, Dixon, and Olive entered into an agreement licensing Johnson Fare Box Company to manufacture and sell the coin changing device for payment of stated royalties. Rankin received a share of such royalties in the taxable years. Rankin furnished Harris some $5,000 in promoting these two devices. In this connection Rankin conferred with Dixon and Olive two or three times a week or whenever Harris wrote them. Rankin made loans to a service station in 1936 and 1938. He made various other loans. In January 1945 Rankin bought a franchise for the manufacture of an orange drink. Opinion Rankin advanced certain funds to a controlled corporation which year by year sustained losses. In 1946 he caused the corporation to be liquidated. The taxpayers claim a loss as a business bad debt of the net amount advanced. There is no dispute as to the amount nor as to the year of loss. The respondent contends (1) that the loss was a nonbusiness bad debt to be treated as a short term-capital loss, or (2) that the amount represents an additional cost of Rankin's stock in the corporation. The question is whether the loss from the worthlessness of the debt was incurred in the petitioners' *45 trade or business. "Business" has been defined as "that which occupies the time, attention and labor of men for the purpose of a livelihood or profit." (C.A. 6, 1943). Whether Rankin was engaged in business in connection with his advances to the Company is a question of fact. In , it was held that the controlling stockholder of a corporation was an employee of the corporation and its business was not his own, hence a loss from worthlessness of its stock was not incurred in the trade or business of the stockholder. See also, . This rule has generally been followed where the issue concerns the "trade or business" of a stockholder of a corporation. See Charles G. Berwind, 20 T.C. - (No. 114, July 9, 1953); ; ; ; and , reversing . Rankin's business in 1944 until September was that of a distributor *46 of products of The Texas Company. This occupied the major part of his time and attention. His tax return for 1944 reported this as his business. From June 1945 and throughout 1946 his principal business was directing the operations of a lumber company in which he had a two-thirds partnership interest. This business had about 75 employees and required about ten hours per day of Rankin's time. His returns for 1945 and 1946 indicate that this business was his principal occupation. The petitioners contend that Rankin was engaged in one or more of the following businesses during the taxable years in addition to his principal businesses: (a) promoting, exploiting and developing patents, or patented inventions and novel devices; (b) promoting and participating actively and continuously in various enterprises and ventures; (c) making loans; and (d) organizing, operating and financing Owen Electric Company. A taxpayer may be engaged in more than one business, but that is not the case here. The activity of Rankin with reference to the operations of Owen Electric Company was nothing more than the usual participation of a corporation officer-stockholder in the business of the corporation, *47 plus the advancing of funds to meet the royalty requirements and other expenses. The petitioners rely on , affirming Tax Court Memorandum Opinion [. In that case the taxpayer was held to be in the business of exploiting patents; the activity involved the major part of his lifetime, was a full-time occupation and was engaged in continuously and regularly throughout his business career. The evidence here does not warrant a similar conclusion. Although Rankin took part in financing various inventions, this was not his principal activity, and it did not occupy the major part of his time and attention. The petitioners also cite . In that case, as in the Stokes Estate case, the loss arose out of one of many ventures undertaken by the taxpayer, which ventures were held to be of such extent and frequency as to amount to the taxpayer's business. similarly involves loans to one of a number of corporations which were organized, operated, and financed by the taxpayers. A similar situation *48 existed in . We do not consider these cases applicable here. The petitioners have attempted to show the multiple nature of Rankin's various investments to support the argument that they collectively were of such an extent as to constitute a trade or business. We are not convinced that they were sufficient for this purpose and we hold that the debt which became worthless in 1946 was a non-business bad debt. Decision will be entered for the respondent.